ATTORNEY GENERAL *v.* MARITAL ENDOWMENT CORP.

1. MARRIAGE—CONTRACTS—CORPORATIONS—PUBLIC POLICY.
   Promotion of marriage between third persons and members of corporation organized for such purpose tends to marriage through mercenary considerations, and is against public policy.

2. QUO WARRANTO — CORPORATIONS — MARRIAGE — PUBLIC POLICY — OUSTER.
   In *quo warranto* proceedings against corporation organized for pecuniary profit and to promote marriage between third persons and its members, judgment of ouster is granted on ground that its business is against public policy.

*Quo warranto* proceedings by Paul W. Voorhies, Attorney General, to oust Marital Endowment Corporation, a Michigan corporation. Submitted February 20, 1932. (Calendar No. 36,287.) Judgment of ouster granted April 4, 1932.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Lillie,* Assistant Attorney General, for plaintiff.

*Smith, Searl & Strawhecker,* for defendant.

CLARK, C. J. This is *quo warranto* instituted by the attorney general to have judgment of ouster against defendant, a Michigan corporation.

Defendant, a corporation for pecuniary profit, was organized in 1930 under Act No. 84, Pub. Acts 1921 (2 Comp. Laws 1929, § 9943 *et seq.*), for the following declared purpose:

"To encourage marital relations by aiding prospective candidates for matrimony, to provide funds therefor, and to enter into contracts in relation to

the same in the State of Michigan and elsewhere in the United States of America and the Dominion of Canada.''

In the conduct of its business, defendant, as the company, issues to accepted applicants a contract:

''That in consideration of the membership fees, semi-annual dues and the assessments as hereinafter provided, to be paid by the beneficiary, the company agrees to pay said beneficiary the sum of
ONE THOUSAND DOLLARS
or such amount thereof as may be collected as hereinafter provided, within ninety (90) days after receipt at the home office of the company of due proof of marriage of the said beneficiary, subject to the following terms and conditions:

''The beneficiary shall be entitled to the benefits provided herein only after he or she has been a member of said company for a period of at least one year. The issuance of this contract is based upon the application of the beneficiary filed in the office of the company at Grand Rapids, Mich., which application, together with the by-laws and this certificate of membership, shall constitute the entire contract between the parties.''

Among general provisions of the contract are the following:

''(1). If the beneficiary marries within less than one year from said date, then said beneficiary shall be entitled to receive the benefits provided in the next succeeding paragraph, provided that for a period of one year from the date hereof, said beneficiary pays the semi-annual dues and all assessments as made, as hereinafter provided; and provided further that said benefits shall not be payable if before the expiration of said period said beneficiary is separated or divorced from his or her spouse; provided, that in no event shall said benefits

be payable until after the expiration of one year from the date hereof.

"(2). If the beneficiary marries after one year from the date of this contract, said beneficiary shall be entitled to receive the maximum sum of one thousand dollars ($1,000), provided, however, that beneficiary shall in no event be entitled to receive more than the amount realized from the assessments levied for the purpose of paying benefits to which the beneficiary may be entitled hereunder; provided, that at the time of said marriage all dues and assessments have been duly paid by the beneficiary. * * *

"(4). This certificate shall mature one year from date hereof, at 12 o'clock a. m., central standard time; and the beneficiary hereunder, if this certificate then be in force and the beneficiary be then unmarried, shall automatically be placed in the nonassessment reserve class, and upon the payment of the semi-annual dues of two dollars ($2), as elsewhere provided for herein, and the yearly membership fee of fifteen ($15) dollars for a period of nine (9) years after the maturity hereof, shall be entitled to the benefits provided in paragraph two, if said beneficiary be single at the expiration of said time."

In addition to annual dues of four dollars and annual membership fee of $15, each joining member is required to contribute, to create a marriage benefit fund, for the period of one year, $1.25 for each member who joined before he did and married. The contract has no limit of the number of assessments for such fund which may be ordered during the year, but defendant's board of directors has sought to limit the number to 360, being a maximum of $450. Fifty-four per cent. of such assessments goes to the marrying member, the remainder in part to the treasury and in part to the company itself.

The point that the plan is unsound and certain to fail is passed as unnecessary to decision. That re-

quiring of the member during the first year the payment of fee and dues and the payment of probably a great number of assessments, perhaps 360, is in effect in restraint of marriage and therefore void as against public policy, is likewise passed as unnecessary to decision.

Marriage of its members is essential to success of defendant's scheme. If there are no marriages, there can be no assessments, from which defendant retains a very considerable portion. The plan is calculated to promote and to induce on financial grounds marriage of the members. This commerce in marriage is, on the part of defendant, in practical effect, the promotion of marriage between third persons, its members and others, and tends to marriage through mercenary considerations. This is against public policy. *Antcliff* v. *June,* 81 Mich. 477 (10 L. R. A. 621, 21 Am. St. Rep. 533).

In *Braum* v. *Potter Title & Trust Co.,* 301 Pa. 365 (152 Atl. 751, 72 A. L. R. 1109), it is said:

"Marriage is not a mere personal relation but a public institution, on the purity and integrity of which the welfare of society depends. * * * Because of this, the courts have always steadily borne in mind in divorce proceedings 'the well recognized principle, often expressed in the words, "The Commonwealth is always the unnamed third party to the proceeding." ' "

And, in a note to that case, reviewing many authorities, 72 A. L. R. 1114, it is said:

"Agreements for promoting marriages, or for procuring marriage with a designated person, have been decried by the common law from an early date as being against public policy. The public weal was thought by the common law to require freedom of

choice of persons entering matrimony, uninfluenced by any mercenary motives of others.''

We quote syllabus of *Mirizio* v. *Mirizio*, 242 N. Y. 74 (150 N. E. 605, 44 A. L. R. 714):

''Public policy in such a vital matter as the marriage contract should. not be made to yield to subversive private agreements and personal considerations.'' P. 84.

And, in refusing a charter to engage in a like business, the court in *Re Helping-Hand.Marriage Ass'n,* 15 Phila. Rep. 644, used the following, which merits approval:

''Anything which induces parties to enter into the marriage relation through mercenary considerations strikes at the very foundation of human society, and is necessarily injurious to the community. The very large number of divorces annually granted by the courts of the several States has justly excited the alarm of thinking men of all classes. It does not require the ken of a prophet to foresee that the granting of corporate rights to associations for the purpose set forth in this application will largely increase the divorce business of the courts, and thus swell to a flood the stream of demoralization in this particular which already exists. On this question I am glad to range myself with those judges who have refused to grant charters to these so-called marriage associations.''

Judgment of ouster, with costs, may be entered.

McDONALD, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.