## GOODWIN v. S. A. HEALY COMPANY.

1. APPEAL AND ERROR—INSTRUCTIONS TO JURY—FAILURE TO OBJECT —COURT RULE.

Assignment of error in the giving of an instruction to the jury is not properly before the court on appeal where the appellant was given an opportunity to object in the trial court, pursuant to court rule, and failed to do so (GCR 1963, 516.2).

2. NEW TRIAL—NEGLIGENCE—LIABILITY—MULTIPLE DEFENDANTS— JURY VERDICT.

A new trial was properly denied plaintiff as against three defendants where liability of two of the defendants was predicated upon negligence of the third defendant, and the jury, under proper instructions, found no negligence on the part of that third defendant.

3. JOINT ADVENTURES—LIABILITY—AGREEMENT—QUESTION OF LAW.

The duties, responsibilities, and liabilities of the parties to a joint adventure between themselves and to others depends upon the joint adventure agreement, and therefore liability of joint adventurers to a third person injured by one of them cannot be determined solely as a question of law without reference to the precise joint adventure agreement.

4. JOINT ADVENTURES — DEFINITION — COMMON UNDERTAKING — PROFITS AND LOSSES.

Joint adventure has not been exactly defined by the courts nor is it possible to enunciate a general rule as to what

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 623.
[2] 39 Am Jur, New Trial § 25.
[3] 46 Am Jur 2d, Joint Ventures § 58.
[4] 46 Am Jur 2d, Joint Ventures § 1.
[5] 46 Am Jur 2d, Joint Ventures § 9.
[6, 7, 8] 19 Am Jur 2d, Corporations § 1050.
    Corporation's power to enter into partnership or joint venture. 60 ALR2d 917.
[9] 5 Am Jur 2d, Appeal and Error § 974.
[10] 5 Am Jur 2d, Appeal and Error § 691.

constitutes a joint adventure, but a joint adventure contemplates an enterprise jointly undertaken to carry out a single project for profit with the profits and losses to be shared by the parties contributing to the common undertaking according to their agreement.

5. JOINT ADVENTURES—INTENTION—CONSTRUCTION OF CONTRACTS.

Intention of the parties to associate themselves in a joint adventure, to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts, is of primary importance in determining if there was a joint adventure.

6. JOINT ADVENTURES — CORPORATIONS — CORPORATE AUTHORITY — CHARTER PROVISIONS — AGREEMENT.

Authority of corporations to enter into a joint adventure and proof as to their agreement of joint adventure can best be determined by considering the pertinent law, the charter provisions of the corporations, and the specific agreement of joint adventure.

7. CORPORATIONS — JOINT ADVENTURES — INJURED EMPLOYEES — LIABILITY.

A basic attribute of a corporate entity is the ability to limit corporate powers and activities; therefore, absent proof of authority of four corporations to enter a joint adventure and proof of what was contained in the agreement of joint adventure, a determination of the employer-employee relationship and of the liability of the four corporations for an injury suffered by a workman of one of the corporations while in furtherance of the enterprise cannot be made.

8. JOINT ADVENTURES—PARTNERSHIP—CORPORATION.

Joint adventure has been largely confined to activities of individuals or partnerships, but if corporate powers to enter a joint adventure are shown to exist, a joint adventure may be equally proper as a corporate activity.

9. APPEAL AND ERROR—NEW TRIAL—JUDGMENT NOTWITHSTANDING THE VERDICT—REMAND.

A remand to the trial court for entry of an order vacating a judgment notwithstanding the verdict of the jury and granting a new trial is proper where it appears on appeal that the basic issues to a proper determination have not been passed upon by the trial judge or the Court of Appeals.

10. Appeal and Error—Briefs—Quotations—Appendix—Court Rules.

   Quotations from the trial transcript in briefs on appeal to the Supreme Court are contrary to court rules which require references to the record to refer to the appendix or appendices which are to accompany the briefs (GCR 1963, 854, 855).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Canham and McGregor, JJ., affirming Oakland, Arthur E. Moore, J. Submitted December 8, 1969. (Calendar No. 39, Docket No. 52,213.) Decided March 12, 1970.

13 Mich App 514, reversed.

Complaint by Patricia M. Goodwin, administratrix of the estate of James H. Goodwin, deceased, against S. A. Healy Company; Gargaro Company, Inc.; Barton-Malow Company; Clarence J. Winningham; Lyle Zelka, doing business as Twelve Town Trucking; and Sumark Sand, Inc., for wrongful death of plaintiff's decedent on defendants' construction job. Verdict for plaintiff against S. A. Healy Company, Gargaro Company, Inc., and Barton-Malow Company, and for defendants Winningham and Zelka and Sumark Sand, Inc. Motion of defendants S. A. Healy Company, Gargaro Company, Inc., and Barton-Malow Company for judgment notwithstanding the verdict granted. Plaintiff appealed to Court of Appeals. Affirmed. Plaintiff appeals. Judgments notwithstanding the verdict reversed, and remanded for a new trial as to those defendants.

*George LaPlata,* for plaintiff.

*Ward, Plunkett, Cooney, Rutt & Peacock (Jeannette A. Paskin,* of counsel), for defendants Healy, Gargaro, and Barton-Malow.

*Robert E. Fox* and *Johnson, Campbell & Moesta,* for defendant Sumark Sand, Inc.

*Davidson, Gotshall, Halsey, Kohl, Nelson, Secrest & Wardle,* for defendants Winningham and Zelka.

ADAMS, J.

## I. *The Facts and Proceedings*

On October 23, 1961, a written contract was entered into between Twelve Towns Drainage District and four corporations. The contract recited that the corporations have "entered into an agreement of joint venture and joint enterprise to construct a certain relief drain in Oakland County, for the Twelve Towns Drainage District." The four contracting corporations were: S. A. Healy Company, a foreign corporation; Gargaro Company, Inc., a Michigan corporation; Barton-Malow Company, a Michigan corporation; and Charles J. Rogers, Inc., a Michigan corporation. The first three corporations are defendants in this action.

The ditch for the drain was dug by Rogers, Healy, and Gargaro because they had the equipment to do the digging. Barton-Malow poured the concrete and had nothing to do with dragline or other digging operations. On October 26, 1962, James H. Goodwin, age 28, while at work on the project as a civil engineer, was struck and killed by a backing truck. It was driven by defendant Winningham, owned by defendant Zelka, and had been obtained for the project by defendant Sumark Sand, Inc., a Michigan corporation, acting as a truck broker for the so-called joint venture companies.

Appellant, widow of Goodwin, brought this action for wrongful death as administratrix of his estate. She sought to hold Healy, Gargaro, and Barton-

Malow liable, as joint tortfeasors, in that they failed to provide a reasonably safe place to work and failed to take adequate safety precautions to coordinate truck movements by the use of lookouts or spotters.

Plaintiff received workmen's compensation payments. It is her claim that the payments were made by Rogers and that her husband was employed solely by that company. Proceeding on that theory, she did not join Rogers as a defendant. Appellant, in her brief, states that an "Agreement of Joint Venture" was entered into between the four contracting companies, separate from the contract with the Twelve Towns Drainage District, and that no mention is made therein relative to the status of the various employees of each company. The agreement was not admitted in evidence upon trial, nor is it reproduced in the record before this Court. It is the claim of defendants Healy, Gargaro, and Barton-Malow that Goodwin was an employee of the joint venture, that the workmen's compensation payments were made to the widow by the joint venture, and that such payments bar an action for wrongful death.

Appellant's theory of liability against defendant Zelka was under the statute relative to ownership of the vehicle and against Sumark Sand under the doctrine of *respondeat superior* on the basis that Winningham, the driver, was a loaned employee of Sumark Sand.

The jury returned a verdict of no cause for action as to defendants Winningham, Zelka, and Sumark Sand but found in favor of plaintiff and against defendants Healy, Gargaro, and Barton-Malow in the amount of $224,300. Judgment was entered on the verdict by the trial court. Defendants Healy, Gargaro, and Barton-Malow filed a motion for judgment notwithstanding the verdict which the trial

court granted without opinion.[1]   Plaintiff filed a motion for new trial as to defendants Winningham, Zelka, and Sumark Sand which was denied by the trial court without opinion.[1]   Plaintiff filed claim of appeal.   Defendants Healy, Gargaro and Barton-Malow did not file a cross-appeal.   The Court of Appeals affirmed (13 Mich App 514).   We granted leave to appeal (381 Mich 806).

## II. *Liability of Winningham, Zelka and Sumark Sand*

Winningham did not appear or testify at the trial. His discovery deposition was taken and was partially read.   In closing argument to the jury, appellant's counsel commented on the absence of Winningham and the inferences that could be drawn from it.   Counsel for Winningham objected but the trial court allowed the argument to proceed.   Counsel for Winningham then presented a requested instruction to cover the argument of plaintiff's counsel to which Winningham's counsel had had no opportunity to reply.   Appellant's counsel objected to the proposed instruction.   The court commented that he could handle the matter.   He undertook to do so by giving the following instruction to the jury:

"First of all, may I say to you that in the trial of this lawsuit, as in any civil lawsuit, all of the parties had the right to subpoena witnesses.   This means to bring them here by the power of the court, under subpoena, and they may do so as to any witness, whether he is a party to the action or whether he is merely a person who has no interest in the lawsuit.   So the parties involved in a lawsuit have the full right of the use of subpoena powers to bring before the court any and all witnesses.

---

[1] See GCR 1963, 527.7, for requirement that the judge shall give a concise statement of his reasons.

"As a result, there is no inference to be drawn as to why or under what conditions certain parties were or were not here. The entire matter of bringing parties before the court to testify lies within the discretion of the attorneys who may so use the subpoena powers."

No objection was made by appellant's counsel to the instructions given by the court. GCR 1963, 516.2, provides:

".2 Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Opportunity to enter objections was afforded counsel by the court. No objection was made by plaintiff's attorney to the instruction given by the judge. We conclude that appellant's assignment of error in such regard is not properly before us under *Hunt* v. *Deming* (1965), 375 Mich 581, 584, 585.

Liability on the part of Zelka of Sumark Sand must be predicated upon the finding of negligence on the part of Winningham. The jury found none. The trial judge did not err in denying plaintiff's motion for a new trial as to defendants Winningham, Zelka and Sumark Sand.

### III. *The Liability of the So-Called Joint Venture Corporations*

Plaintiff and defendants Healy, Gargaro and Barton-Malow all take the position (although they do not agree as to the legal consequences) that there was a joint venture agreement among the four so-called joint venture corporations. In a colloquy with

the attorneys upon argument of the motions for judgment notwithstanding the verdict and for new trial, the trial judge stated: "It seems to me there is no question there was a joint venture here."

Plaintiff contended that even though there was a joint venture, such a relationship did not automatically constitute the joint venturers employers within the provisions of the Workmen's Compensation Act, and that under the proofs Goodwin was solely an employee of Rogers; consequently, the other joint venturers could be held liable under the wrongful death act. The trial judge and the Court of Appeals concluded the joint venture resulted in Goodwin being an employee of all of the joint venture corporations and that the Workmen's Compensation Act was therefore applicable, barring liability in tort.

The authority of the three Michigan corporations and the Ohio corporation to enter into a joint venture was not considered. Consequently, we do not pass upon that proposition. Even if it be assumed that a valid agreement of joint venture could be entered into, the nature of that venture, the duties, responsibilities and liabilities of the parties between themselves and to others would in a large measure flow from the agreement they entered into. Plaintiff recognizes this in contending that Goodwin was employed solely by Rogers even though he was engaged in carrying out the joint venture. Plaintiff and defendants seem both to contend, however, that any other aspects of a joint venture can be determined solely as questions of law without any reference to the precise joint venture agreement of the parties. With this we do not agree.

In *Hathaway* v. *Porter Royalty Pool, Inc.* (1941), 296 Mich 90, this Court said (pp 102, 103):

"On the whole, however, it must be said that courts have not laid down any very certain, satisfactory or all-inclusive definition of a joint adventure, nor have they established any fixed or certain boundaries thereof, but, in most cases, they have been content to determine merely whether the given or conceded facts in the particular case constituted the relationship of joint adventurers. (30 Am Jur, p 678.) See *State, ex rel. Ratliffe,* v. *Superior Court for Whitman County* (1919), 108 Wash 443, 449 (184 P 348). Joint adventure has been defined, however, as an enterprise undertaken by several persons jointly. *Wyoming-Indiana Oil & Gas Co.* v. *Weston* (1932), 43 Wyo 526, 535 (7 P2d 206, 80 ALR 1037); as an association of two or more persons to carry out a single business enterprise for profit, *Fletcher* v. *Fletcher* (1919), 206 Mich 153. It is said, for instance, that such an enterprise differs from a single partnership because it relates only to a single transaction, *Fletcher* v. *Fletcher, supra;* and that a joint adventure is distinguishable from joint ownership and tenancy in common because the latter lacks the feature of adventure. *Bond* v. *O'Donnell* (1928), 205 Iowa 902, 909 (218 NW 898, 63 ALR 901).

"The courts have not laid down an exact definition of what constitutes a joint adventure nor is it possible to enunciate a general rule by means of which the question as to what amounts to a joint adventure can be answered, because such an answer depends largely on the terms of the particular agreement in controversy, upon the construction which the parties have given it, upon the nature of the undertaking, as well as upon other facts. See 30 Am Jur, p 680.

"It can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that the profits are to be shared, as well as the losses, though the liability of a joint adventurer for a proportionate part of the

losses or expenditures of the joint enterprise may be affected by the terms of the contract. See 17 Ann Cas 1022, 1025; 24 Ann Cas 202, 203, and 39 Ann Cas 1210, 1214. There must be a contribution by the parties to a common undertaking to constitute a joint adventure (see annotation, 63 ALR 909, 910); and a community of interest as well as some control over the subject matter or property right of contract. *Griffiths* v. *Von Herberg* (1917), 99 Wash 235 (169 P 587); *Darling* v. *Buddy* (1927), 318 Mo 784 (1 SW2d 163, 58 ALR 493).

"Whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers or some other relation depends upon their actual intention, *Reid* v. *Schaffer* (1918), 249 F 553; and such relationship arises only when they intend to associate themselves as such. *Berkey* v. *Railway Co.* (1926), 244 NY 84 (155 NE 58, 50 ALR 599). This intention is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts. *Gleichman* v. *Famous Players-Lasky Corporation* (1928), 241 Mich 266."

In *Denny* v. *Garavaglia* (1952), 333 Mich 317, the plaintiffs were injured when their car hit a depression in a road. This Court said (pp 321, 322):

"We shall first discuss the claim made by Garavaglia that defendant Carl Goodwin & Sons is jointly liable with Garavaglia on the theory that both defendants were engaged in joint venture. On this issue, the trial court made a finding of fact and gave his interpretation of the law relating thereto as follows:

" 'Both contractors agreed to submit 1 bid together to the State highway department, Garavaglia to do the grading and Goodwin to do the paving. There was 1 contract the terms of which treated the defendants as a single entity with full responsibility for all of the work covered by the contract to be

borne by both defendants. A single check covered the work done by both contractors. Their work was integrated and carried on in such a way as to cooperate to the fullest extent. None of Goodwin's equipment was used to haul the dirt on M–50 and no control exercised by him over this portion of the contract. There was to be no joint sharing of profits, it being understood and agreed that each was to have the profits made from his own share of the work and each was to suffer his own loss, if any. Under these circumstances is Carl Goodwin & Sons liable for the damages suffered by Geneva Van Houten?

" 'The intent of the parties is important. *Hathaway* v. *Porter Royalty Pool, Inc.* (1941), 296 Mich 90, 103 (138 ALR 955). We find from the evidence that they did not relinquish to each other the right to control the operation of the other. As a matter of fact it is difficult to find where their operations in this particular case would be any different than if separate bids had been made and 2 contracts issued, except of course, that there was a single check issued for all the work done by both contractors to date and both parties were liable for completion of the whole project. This is not the case where any person has relied upon an apparent joint venture to his damage but where there is a question of whether or not to impute negligence. There being no community of interest in the profit of this venture and there being no actual exercise of control over the operations under consideration here by defendant Goodwin it would not seem that a holding of imputed negligence would be proper. The court finds that for the purposes of this case that a joint venture between these defendants did not exist and that the action against Carl E. Goodwin, Wayne T. Goodwin, Norman A. Goodwin and Ivan F. Goodwin, individually and as copartners doing business as Carl Goodwin & Sons may be dismissed and a judgment of no cause of action entered in their favor.' "

The Court then quoted the third paragraph of *Hathaway, supra,* quoted in this opinion, and concluded (p 323):

"In view of the above language as applied to the facts in the case at bar we find that defendants Garavaglia and Goodwin were associated together under a contract with the State highway department to construct a portion of a road. Payment was made to them jointly on the basis of estimates of work done. Each firm received a portion of the check based upon the work done by each firm. As of November 20, 1948, Goodwin & Sons had not performed any part of the work and had not received any money. There was no control by Goodwin over the work that Garavaglia would do nor was there any control by Garavaglia over the work Goodwin would do. There was to be no sharing of losses. It clearly appears that the contracting firms did not intend to create a joint venture. We are in accord with the finding of the trial court that a joint venture did not exist between the 2 defendants."

See also: *Swan* v. *Ispas* (1949), 325 Mich 39, 43, 44; *Grabendike* v. *Adix* (1952), 335 Mich 128, 139; and *Summers* v. *Hoffman* (1955), 341 Mich 686, 693, all citing *Hathaway, supra,* with approval. See also: Larson's Workmen's Compensation Law, Vol 1A (1967), Employment Status (Ch VIII), Joint Employment, § 48.40 at pp 840–843, for a discussion of joint employment as related to the precise joint venture agreement.

As previously noted in this opinion, while it is purported that an agreement was entered into by the corporations, it was never introduced in evidence and is not a part of the record before this Court. Some conflicting evidence was presented— payrolls, insurance, withholding, etc.—from which a jury might conclude that Goodwin was employed by Rogers or, on the contrary, by all four corporations.

Assuming that Goodwin was employed solely by Rogers and not by all four corporations and that the jury found some of the joint venture corporations guilty of negligence, the following questions remain to be answered:

Can the corporations to a joint venture be held jointly and severally liable as tortfeasors even if there has been no community of wrongdoing?

Can some of the corporations to a joint venture be held jointly and severally liable as tortfeasors when admittedly one of the corporations to the joint venture is not liable because of the provisions of the Workmen's Compensation Act?

Is the relationship between the corporate members of a joint venture such that each becomes the agent for the others no matter what part the individual corporations are to play in the joint venture? (For example, one corporation to a joint venture might agree to provide financing or materials or, as in this case, to lay the concrete but not to dig the drain.) Stated in another way: Is the failure of one corporation to perform a legal duty chargeable to all?

These questions cannot be resolved without consideration of the authority of the corporations to enter into a joint venture and proof as to what was their agreement of joint venture. Corporate authority must be determined from the pertinent law of Michigan and Ohio and the charter provisions of the corporations. The best evidence of the specific agreement of the parties would be the agreement of joint venture.

One of the basic attributes of a corporate entity is its ability to limit corporate powers and activities. We are not prepared to decide upon the record before us that one corporation can expose its corporate assets to liability for the tortious acts of a second corporation engaged in an activity over which the

first corporation has no control; or that by the simple device of a joint venture a corporation can engage in activities which would otherwise be beyond its corporate authority; or that one corporation becomes the employer of the employees of a second, third, or fourth corporation solely by virtue of a joint undertaking.

The legal concept of a joint venture has been largely confined to activities of individuals or partnerships and legal principles applicable to partnerships have been generally found most apposite for this hybrid legal entity. For a discussion, see 46 Am Jur 2d, Joint Ventures, § 4, p 24. It may be that a joint venture is equally proper as a corporate activity if such corporate powers are shown to exist.[2]

We conclude that basic issues to a proper determination of this action have not been passed upon by the trial judge or the Court of Appeals. In consequence, we remand for entry of an order vacating the judgment notwithstanding the verdict of the jury and granting a new trial as to defendants Healy, Gargaro, and Barton-Malow. The judgment as to defendants Winningham, Zelka and Sumark Sand is affirmed. We assume that other questions raised in this appeal but not passed upon will not arise upon re-trial.

Appellant's brief contains numerous passages that purport to be quotations from the transcript. Such practice is contrary to our rules. Counsel is admonished because of the use of such incorrect references. For the correct practice, see GCR 1963, 854 and 855.

---

[2] See OAG 1965–1966, No 3652, p 161 (October 18, 1965), dealing with the question of the authority of an Ohio corporation to be admitted into Michigan for the purpose of entering into a partnership.

Defendants Winningham, Zelka and Sumark Sand may have costs; otherwise, no costs are granted but shall abide the final result.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, and T. G. KAVANAGH, JJ., concurred with ADAMS, J.