DIONNE v CITY OF TRENTON

1. MOTIONS—SUMMARY JUDGMENT—GOVERNMENTAL IMMUNITY—
   COURT RULES.

   A motion for summary judgment is a proper way to present the
   issue of governmental immunity to the court; such motion tests
   the sufficiency of the complaint in pleading facts in avoidance
   of immunity (GCR 1963, 117.2[1]).

2. COMMON LAW—STATES—GOVERNMENTAL IMMUNITY—NUISANCE.

   Common law immunity has been abrogated in Michigan, there-
   fore, the common law nuisance exception to governmental
   immunity does not survive the demise of the doctrine on which
   it was engrafted.

3. STATES—GOVERNMENTAL IMMUNITY—NUISANCES—STATUTES.

   Governmental immunity exists in Michigan as defined by statute;
   Michigan's governmental immunity statute does not list nui-
   sances among its exceptions (MCLA 691.1401 *et seq.;* MSA
   3.996[101] *et seq.).*

4. STATES—TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL
   FUNCTION—STATUTES.

   The statute regarding immunity from tort liability for govern-
   mental agencies engaged in a governmental function provides
   that all governmental agencies shall be immune from tort
   liability in all cases wherein the government agency is engaged
   in the exercise or discharge of a governmental function (MCLA
   691.1407; MSA 3.996[107]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment § 16.
[2] 16 Am Jur 2d, Constitutional Law § 49.
   57 Am Jur 2d, Municipal, School, and State Tort Liability § 28.
[3] 58 Am Jur 2d, Nuisances § 18.
[4, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 25.
[5] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 33,
   51, 52.
[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 28.
[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 82.

5. STATES—TORTS—GOVERNMENTAL IMMUNITY—PROPRIETARY FUNC-
   TIONS—PECUNIARY PROFIT—STATUTES.

   The governmental immunity of the state does not apply to
   actions to recover for bodily injury or property damage arising
   out of the performance of a proprietary function; proprietary
   function means any activity which is conducted primarily for
   the purpose of producing a pecuniary profit for the state,
   excluding any activity normally supported by taxes or fees
   (MCLA 691.1413; MSA 3.996[113]).

6. STATES—TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL
   FUNCTION—PROPRIETARY FUNCTION—STATUTES.

   The statute regarding immunity from tort liability for govern-
   mental agencies grants immunity only in cases wherein the
   governmental agency is engaged in the exercise or discharge of
   a governmental function; to avoid such immunity it is not
   necessary to establish that the injury arose out of the perform-
   ance of a proprietary function since it is only necessary to
   establish it did not arise out of the exercise or discharge of a
   governmental function (MCLA 691.1407; MSA 3.996[107]).

7. TORTS—COMMON LAW—LIABILITY—GOVERNMENTAL FUNCTION—
   PUBLIC NATURE.

   Governmental function as used in the statute granting the state
   immunity from tort liability is a term to describe those activi-
   ties of government which due to their public nature should not
   give rise to liability at common law (MCLA 691.1407; MSA
   3.996[107]).

8. MUNICIPAL CORPORATIONS—POLICE TRAINING—SHOOTING RANGES—
   PUBLIC NATURE—GOVERNMENTAL FUNCTION—NEGLIGENCE—LI-
   ABILITY—GOVERNMENTAL IMMUNITY.

   The training of police officers, including the establishment and
   operation of a shooting range to accomplish that purpose, is of
   a public nature, for the public good, and the exercise of a
   governmental function; allowing presence on and use of the
   shooting range by a private person, whether or not a relative of
   a policeman, does not have any purpose of police training, is
   not done pursuant to any duty owed to the general public, or
   for the common good of all, and, therefore, negligence on the
   part of the city involved in permitting such person to shoot at
   the range, without proper supervision, and for private purposes
   would be negligence occurring other than in the exercise of a
   governmental function and is not immune from liability.

Appeal from Wayne, Neal Fitzgerald, J. Submit-

ted March 3, 1977, at Detroit. (Docket No. 28039.) Decided October 24, 1977.

Complaint by Etienne Dionne, as administrator of the estate of Larry Dionne, deceased, and Etienne Dionne and Eleanor Dionne for themselves against the City of Trenton, certain named elected and appointed city officers and Monsanto Company, seeking damages for wrongful death resulting from a shooting accident at a pistol range maintained and operated by the city. Summary judgment for all defendants other than Monsanto. Plaintiffs appeal by leave granted. Reversed and remanded.

*Ripple & Chambers, P. C.* (by *Michael S. Mazur),* for plaintiffs.

*Conklin & Maloney,* for defendants City of Trenton, and its officers.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

W. F. HOOD, J. Upon leave granted, plaintiffs appeal from a summary judgment in favor of all defendants other than Monsanto Company. Defendants other than Monsanto moved for accelerated judgment in their favor on the ground that they were immune from suit by virtue of MCLA 691.1407; MSA 3.996(107). Plaintiffs elected to treat the motion as one for summary judgment under GCR 117.2(1) and it was summary judgment which the trial court ordered to be entered.

A motion for summary judgment under GCR 1963, 117.2(1) is a proper way to present to the court the issue of governmental immunity. This is made clear by the opinion of Justice RYAN in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*McCann v Michigan,* 398 Mich 65, 74; 247 NW2d 521 (1976). Such motion tests the sufficiency of the complaint in pleading facts in avoidance of immunity.

Plaintiffs[1] alleged in substance that defendants City of Trenton and its named elected and appointed officers maintained and operated a pistol shooting range for the use of the Trenton Police Department, on land leased for the purpose by the city, as lessee, from Monsanto Company. On April 24, 1973, plaintiffs' decedent, Larry Dionne, aged 10, came upon the premises to play and was there shot and killed by the son of a Trenton city police officer. It is alleged the death of the decedent was proximately caused by negligence of the defendants in maintaining the shooting range at that location, and in failing to use due care in operating and controlling the shooting range.

In avoidance of the doctrine of governmental immunity, plaintiffs allege the existence of the shooting range at its location constituted a nuisance and claim that, as such, it is an exception to the doctrine of governmental immunity. Secondly, plaintiffs claim the operation of the shooting range was a municipal and proprietary function, and not a governmental function.

In support of the contention that a nuisance existed, plaintiffs urge that a shooting range in the area, which plaintiffs allege to be a residential area, was an inherently dangerous condition. Plaintiffs also claim that the existence of the shooting range at that location violated the zoning

---

[1] No issue has been raised in this appeal concerning the propriety of the parents of the deceased joining, in their individual capacity, as parties plaintiff in this suit. Such joinder appears to contravene MCLA 600.2922; MSA 27A.2922, which provides that actions for wrongful death shall be brought only under that statute and shall be brought by and in the name of the personal representative of the deceased.

ordinance of the city, and point out that the statute authorizing zoning ordinances provides in part:

"(U)ses carried on in violation of any provision of local ordinances or regulations made under the authority of this act are hereby declared to be a nuisance per se." MCLA 125.587; MSA 5.2937.

Plaintiffs' implied syllogism is defective, however, in its major premise—that nuisances, as such, are exempt from the application of the doctrine of governmental immunity. The nuisance exception to governmental immunity originated and existed as a common law exception to common law immunity. Common law immunity has been abrogated in this jurisdiction. It was abolished with reference to municipal corporations by *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), and with reference to the state and its agencies, including school districts, by *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976). The common law nuisance exception cannot survive the demise of the doctrine on which it was engrafted.

Governmental immunity now exists as defined by statute, and the immunity statute[2] does not list nuisances among its exceptions. Exceptions, of course, may be imposed by the paramount authority of the constitution. When an activity or condition (possibly termed a "nuisance") occurring on a defendant's property reaches across the property line to trespass upon or otherwise interfere with the use or enjoyment of another's property, the constitutional prohibition against taking private property without just compensation[3] may preclude

[2] MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

[3] Const 1963, art 10, § 2.

application of the statutory grant of immunity. *Buddy v Department of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975). Such constitutional conflict does not arise in the case before us, however, because the tragedy for which plaintiffs seek redress did not occur outside the defendants' premises, but within it.

Plaintiffs' argument that the allegations of the complaint are sufficient to avoid immunity on a nuisance theory, therefore, must fail.

Plaintiffs also contend the allegations of the complaint are sufficient to avoid immunity on the ground the alleged tortious conduct occurred in the performance of a proprietary function, not a governmental function.

MCLA 691.1407; MSA 3.996(107) provides in part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

MCLA 691.1413; MSA 3.996(113) prescribes in part that "(t)he immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as herein defined. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees".

Plaintiffs' complaint alleges no facts from which it may be adduced the shooting range was conducted primarily for a pecuniary profit; therefore, the conclusionary allegation in the complaint that the range was operated as a proprietary function must be disregarded.

Our Supreme Court has informed us, however, that while historically the cases have tended to separate activities of the state and governmental agencies into the two categories of governmental function and proprietary function, this should not control the scope of inquiry in every case, because there are certain activities that fit into neither category. Opinion of Justice RYAN in *McCann v Michigan, supra,* at 78, 79. The statute grants immunity only in cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function. Therefore, it is not necessary to the avoidance of immunity to establish that the injury arose out of the performance of a proprietary function; it is only necessary to establish it did not arise out of the exercise or discharge of a governmental function.

*Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), discusses the meaning of the term "governmental function" as follows:

"The term 'governmental function' is nowhere defined in the statute. However, this does not mean that we have been left with no guidelines in determining what the Legislature intended by adopting this particular phraseology.

" 'Governmental function' is a term of art which has been used by the courts of this state to describe those activities of government which due to their public nature should not give rise to liability at common law." *Thomas, supra,* at 9.

"The question whether or not a government agency was engaged in a governmental function will not always be easily answered. In many instances governmental activities have never been examined in terms of whether they constitute governmental function and in

others the case-law precedent is less than clear. In those cases the courts will be forced to adapt case-law precedent as best they can and will no doubt be called upon to use their own creative genius to resolve the case." *Thomas, supra,* at 11.

Under these guidelines, we would have little hesitation in finding that the training of police officers, including the establishment and operation of a shooting range to accomplish that purpose, is of a public nature, for the public good, and the exercise of a governmental function. If the injury had occurred as the result of a shot negligently fired by a policeman or by an instructor in the course of police training, there would be a basis for holding that immunity from liability existed.

The injury in this case did not come, however, from the training of a police officer, but was inflicted by a gun fired by a non-policeman. Allowing the presence on and use of the shooting range by a private person, whether or not a relative of a policeman, does not appear to have had any purpose of police training; nor to have been done pursuant to any duty owed to the general public or "for the common good of all".[4] If there was negligence on the part of the city involved in permitting such person to shoot at that time and place, without proper supervision, and for private purposes, this would be negligence occurring other than in the exercise of a governmental function and would not be immune from liability.

It is true that the plaintiffs' complaint is couched in terms of liability for nuisance, which we conclude is not an appropriate theory. Construing the complaint broadly, however, we find its allegations are sufficient to avoid immunity on the

---

[4] *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619; 196 NW 386 (1923), quoted in *McCann v Michigan, supra,* at 79.

ground that the injury did not arise out of the exercise or discharge of a governmental function.

The sufficiency of the allegations as to the liability of the individual defendants is a question that has not been briefed or presented in this appeal; therefore, we do not discuss that question. It appears, however, that summary judgment in favor of such defendants was granted on the premise that because the city was immune from liability, so were the individual defendants. Since we find error in the lower court's decision that the city was immune, we also reverse the decision as to the individual defendants.

Reversed and remanded. Costs to plaintiffs.