BERGER v CITY OF BERKLEY

Docket Nos. 31382, 77-716. Submitted November 15, 1978, at Detroit.
   —Decided December 5, 1978.

   Ford Berger and Peggy Berger, his wife, brought a tort action in
      Oakland Circuit Court against the City of Berkley and 57 other
      municipalities, police departments and individuals to recover
      for personal injury to Ford Berger, an employee of the Royal
      Oak Police Department, who was totally blinded and suffered
      severe facial disfigurement when he was struck in the face by
      rice kernels fired from a shotgun by a fellow police officer while
      they were participating in a police training exercise of the
      tactical support unit of the South Oakland County Municipal
      Aid Pact. Farrell E. Roberts, J., dismissed the complaint
      against all defendants holding (1) that plaintiffs' exclusive
      remedy was under the Worker's Disability Compensation Act,

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 27,
   28.
   Municipal immunity from liability for torts. 60 ALR2d 1198.
[2] 57 Am Jur 2d, Minicipal, School, and State Tort Liability §§ 31, 32,
   243.
   Municipal immunity from liability for torts. 60 ALR2d 1198.
[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 243,
   250.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 118-
   120.
   What is "motor vehicle" or the like within statute waiving govern-
      mental immunity as to operation of such vehicles. 77 ALR2d 945.
[5-7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 30.
   Municipal immunity from liability for torts. 60 ALR2d 1198.
[8, 9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
      Political Subdivisions §§ 199, 200.
   57 Am Jur 2d, Municipal, School, and State Tort Liability § 27.
   Municipal immunity from liability for torts. 60 ALR2d 1198.
[10, 11, 15] 57 Am Jur 2d, Municipal, School, and State Tort Liability
      §§ 85, 89.
[12] 46 Am Jur 2d, Judgments §§ 770, 775, 776, 780.
[13] 81 Am Jur 2d, Workmen's Compensation §§ 50, 51.
[14] 82 Am Jur 2d, Workmen's Compensation §§ 547, 635.
[16] 73 Am Jur 2d, Summary Judgment § 4.

and (2) that the defendants were entitled to governmental immunity. Plaintiffs appeal. *Held:*

1. No immunity is granted to an individual for personal acts of negligence solely because he is a governmental employee; therefore, the grant of accelerated judgment in favor of the individual police officers was improper and the issue of negligence of the individual officers should be remanded for trial.

2. Injury to a plaintiff by the act of a coemployee in a situation covered by the Worker's Disability Compensation Act bars tort recovery. On remand, before reaching the issue of individual liability, the trial court must determine whether the police exercise was a joint venture creating a coemployer-coemployee relationship and whether plaintiffs are therefore barred from proceeding against the individual defendants by the exclusive remedy provision of the compensation act.

3. Governmental immunity applies in all cases wherein a governmental agency is engaged in the exercise of a governmental function. The management, operation and control of a police department is a governmental function, and since officer training is part of the operation of a police department, participation in a police training exercise is a governmental function; therefore, tort actions directed against the police department are defeated on the grounds of governmental immunity.

Reversed and remanded on the issue of individual liability of the police officers. Affirmed as to the grant of accelerated judgment in favor of the municipalities and police departments not in default.

BRONSON, J., concurred with Judge ALLEN, not so much because he agrees with the policy of governmental immunity announced in Judge ALLEN's opinion, but because he feels that the Supreme Court has not yet embraced a position which would allow the decision to go the other way.

T. M. BURNS, J., dissented in part. He would hold that governmental immunity cannot be established until after the facts are developed and the relationship of the various defendants to each other and to the plaintiffs can be determined. He would reverse and remand for further proceedings.

OPINION OF ALLEN, J.

1. TORTS—GOVERNMENTAL AGENCIES—GOVERNMENTAL IMMUNITY—
      STATUTES.
      Governmental agencies are immune from tort liability in all cases wherein the governmental agency is engaged in the

exercise or discharge of a governmental function (MCL 691.1407; MSA 3.996[107]).

2. MUNICIPAL CORPORATIONS—POLICE DEPARTMENTS—TORTS—GOVERN-
MENTAL IMMUNITY.

The management, operation and control of a police department is a municipal function and tort actions directed against such departments are defeated on the grounds of governmental immunity.

3. MUNICIPAL CORPORATIONS—POLICE TRAINING—GOVERNMENTAL
FUNCTION.

Officer training is part of the operation of a police department and participation in a police training exercise is therefore a governmental function.

4. STATUTES—TORTS—GOVERNMENTAL AGENCIES—GOVERNMENTAL IM-
MUNITY—OPERATION OF VEHICLE—DISCHARGE OF FIREARM.

A statute provides that governmental agencies shall be liable for bodily injury resulting from the negligent operation of an agency owned motor vehicle by an officer of the agency; the statute clearly requires that the injury result from the opera-tion of a vehicle and does not apply where injury results from the discharge of a firearm which was in no way caused by, or the result of, the operation of the vehicle (MCL 691.1405; MSA 3.996[105]).

CONCURRENCE BY BRONSON, J.

5. TORTS—GOVERNMENTAL IMMUNITY—INJURY TO INDIVIDUAL.

*The doctrine of governmental immunity is a carryover from days when it was thought that "it is better that an individual should sustain an injury than that the public should suffer an inconve-nience"; such an idea is not the prevailing mood today and a concept which imposes the entire burden of government's wrongful acts on the single injured individual is abhorrent to our social philosophy.*

6. TORTS—GOVERNMENTAL IMMUNITY—SOCIETAL INTERESTS—INTER-
ESTS OF INDIVIDUAL.

*A balance should be struck in examining the doctrine of govern-mental immunity so that society is no longer automatically viewed as the superior and the individual necessarily as the inferior; instead the rights of the individual should be consid-ered paramount and the government must be able to justify interfering with those rights.*

7. TORTS—GOVERNMENTAL IMMUNITY—LIABILITY—POLICY FOR IMMU-
   NITY.

   *Governmental immunity should not be invoked merely because a
   government agency or official performed the activity which
   caused an injury, but should be invoked only when there are
   sound policy reasons behind exempting the government from
   tort liability; governmental immunity should be the exception
   not the norm.*

8. TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL ACTIVITIES.

   *Government activities, for purposes of analyzing the application
   of governmental immunity, generally can be divided into two
   categories: 1) policy making, and 2) policy implementing.*

9. TORTS—GOVERNMENTAL IMMUNITY—POLICY-MAKING ACTIVITIES.

   *Policy making activities are uniquely governmental in nature
   and should be insulated from liability for society to function;
   thus there is justification for invoking the doctrine of govern-
   mental immunity for policy making activities.*

10. TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENT OFFICIALS—POL-
    ICY IMPLEMENTING ACTIVITIES.

    *Governmental immunity should not be available as a defense to
    actions for damages for injuries caused by governmental offi-
    cials engaged in policy implementing activities; policy imple-
    menting activities have numerous counterparts in the private
    sector and there is no justifiable reason in denying recovery to
    persons injured during the course of these activities merely
    because they were unfortunate enough to be injured by a
    negligent governmental official instead of his counterpart in
    the private sector.*

11. TORTS—GOVERNMENTAL IMMUNITY—POLICY MAKING DECISIONS—
    POLICE TRAINING EXERCISES—BALANCING OF POLICY CONSIDERA-
    TIONS.

    *A decision to conduct a police training exercise is clearly a policy
    making decision which should not subject a governmental body
    to liability; however, the actual shooting of a person by an
    official involved in the exercise is simply the negligent act of a
    government official and involves no balancing of policy consid-
    erations and public concerns, it is merely the negligent imple-
    mentation or operation of a previously determined policy deci-
    sion and as such should not be shielded from liability by the
    defense of governmental immunity.*

12. JUDGMENT—DEFAULT JUDGMENT—COURT RULE.

*Once a default of any party has been duly filed or entered, that party shall not proceed with his case until his default has been set aside; since a party cannot proceed with his case until the default is set aside, it is improper for the court to grant judgment in his favor (GCR 1963, 520.1).*

13. WORKMEN'S COMPENSATION—TORTS—EXCLUSIVE REMEDY PROVISION—STATUTES.

*A tort suit is barred by the exclusive remedy provision of the Worker's Disability Compensation Act where a plaintiff was injured by the act of a coemployee in a situation covered by the statute (MCL 418.131; MSA 17.237[131]).*

14. TORTS—WORKMEN'S COMPENSATION—EMPLOYMENT—EVIDENCE—JURY.

*The issue of whether a plaintiff was an employee of the defendant in a tort suit, as opposed to a worker's compensation hearing, should be submitted to a jury, under proper instructions, for a determination based on all the evidence.*

15. MUNICIPAL CORPORATIONS—POLICE OFFICERS—NEGLIGENCE—GOVERNMENTAL IMMUNITY.

*Police officers have an individual common-law duty to exercise due care in the performance of their duties; no immunity is granted to an individual for personal acts of negligence solely because he is a governmental employee.*

16. JUDGMENT—SUMMARY JUDGMENT—TORTS—DUTY OF CARE—MATERIAL FACT—COURT RULES.

*Summary judgment for a defendant may be proper in a tort action where there is no question of material fact concerning a breach of the defendant's duty to the plaintiff, that is, if the defendant is not involved with the injury (GCR 1963, 117.2[3]).*

*Lacey & Jones* (by *John L. Salter*), for plaintiffs.

*Lakin & Worsham, P.C.,* for defendants City of Oak Park and R. Howell.

*John N. Highland,* for defendants Bloomfield Township and Bloomfield Township Police Department.

*Bernard Girard,* for defendants City of Bloomfield Hills and Bloomfield Hills Police Department.

*Conklin & Maloney,* for defendants City of Clawson, Clawson Police Department, Lathrup Village, Lathrup Village Police Department, Farmington, Farmington Police Department, City of Novi, and City of Novi Police Department.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for defendants City of Southfield, Southfield Police Department, Daniel Mead and James Gutenburr.

*Johnson, Campbell & Moesta,* for defendants City of Troy and Troy Police Department.

*Harvey, Kruse & Westen, P.C.,* for defendants City of Huntington Woods, Huntington Woods Police Department, Huntington Woods Department of Public Safety, Village of Beverly Hills, Beverly Hills Police Department and Officer Danaher.

*Dice, Sweeney, Sullivan & Feikens, P.C.,* for defendants City of Madison Heights and Madison Heights Police Department.

*Stewart, O'Reilly, Cornell, Donovan, Lascoe & Rancilio, P.C.,* for defendants City of Ferndale, Ferndale Police Department and Officer Kellogg.

*Plunkett, Cooney, Rutt, Waters, Stanczyk & Pedersen* (by *Joseph V. Walker* and *Jeannette A. Paskin*), for defendants City of Berkley, Berkley Police Department, City of Birmingham and Birmingham Police Department.

*Davidson, Gotshall, Kohl, Secrest, Wardle,*

*Lynch & Clark* (by *Wayne C. Gardner),* for defend-
ant Village of Bingham Farms.

Before: BRONSON, P.J., and ALLEN and T. M.
BURNS, JJ.

ALLEN, J. This author and Judge BRONSON, who
writes separately, concur in the opinion of Judge
T. M. BURNS except that portion thereof holding
that the defense of "governmental immunity" does
not apply to the municipal defendants themselves.
We simply cannot agree that the police training
exercise being conducted when plaintiff was struck
in the face by rice pellets was not a governmental
function. Therefore, we would affirm the grant of
summary judgment in favor of those municipali-
ties and police departments not in default. In all
other respects we agree with Judge BURNS's opin-
ion.[1]

The pertinent section of Michigan's governmen-
tal immunity act, MCL 691.1401 *et seq.;* MSA
3.996(101) *et seq.,* reads:

"Except as in this act otherwise provided, all govern-
mental agencies shall *be immune from tort liability in
all cases wherein the government agency is engaged in
the exercise or discharge of a governmental function."*
MCL 691.1407; MSA 3.996(107). (Emphasis supplied.)

While our courts have frequently disagreed as to
whether a specific negligent act was committed "in
the exercise or discharge of a governmental func-

[1] Compatible with Judge BURNS's opinion we would: (as to Issue I)—
—reverse the judgments entered against those defendants who were
defaulted, and remand to allow plaintiffs to move for entry of a
default judgment or other appropriate relief; (as to Issue II)—remand
to the trial court for determination by the trier of fact whether
plaintiff was an employee of defendant; (as to Issue III)—reverse
judgment in favor of the individual defendant and allow discovery
and consideration of individual motions for summary judgment.

tion" nothing seems clearer or more settled than the doctrine that the management, operation and control of a police department is a municipal function, and tort actions directed against such department are defeated on the grounds of governmental immunity. *McPherson v Fitzpatrick*, 63 Mich App 461, 463; 234 NW2d 566 (1975), *Anderson v Detroit*, 54 Mich App 496; 221 NW2d 168 (1974), *Walkowski v Macomb County Sheriff*, 64 Mich App 460, 463; 236 NW2d 516 (1975). The only difference between those cases and the instant case is that in the cited cases the officers' actions were committed while on routine police duty whereas in the case before us the wrongful action took place during a training exercise. We find the difference inconsequential. Training is part of the operation of a police department, and participation in a police training exercise is therefore a governmental function. As was stated in *Dionne v City of Trenton*, 79 Mich App 239, 246; 261 NW2d 273 (1977), an opinion released subsequent to oral argument in the instant case:

" * * * [W]e would have little hesitation in finding that the training of police officers, including the establishment and operation of a shooting range to accomplish that purpose, is of a public nature, for the public good, and the exercise of a governmental function. *If the injury had occurred as the result of a shot negligently fired* by a policeman or by an instructor in the course of police training, there would be a basis for holding that immunity from liability existed." (Emphasis supplied.)

Plaintiffs acknowledge the *McPherson-Walkowski* rule that "the operations of police departments are governmental functions" but claim that pursuant to *Thomas v Dept of State Highways*, 398 Mich 1; 247 NW2d 530 (1976), such case law no

longer has force. To support this contention, plaintiffs cite footnote 4 at page 17 of *Thomas.* However, that footnote appeared in the dissenting opinion in *Thomas.* The *Thomas* majority approach looks to existing case law to determine what is and what is not a governmental function. Under existing case law the operation of a police department is a governmental function.

Subsequent to oral argument in the instant case our Supreme Court issued its opinion in *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978). In that opinion the justices divided evenly on the question of whether or not the conduct complained of was in the exercise or discharge of a governmental function. Three justices opted to adopt the policy making/policy implementing test as set forth in the minority opinion in *Thomas,* supra. Three justices would follow the majority in *Thomas* and look to the common law for guidance in deciding whether a specific activity was in the discharge of a governmental function. One justice felt it unnecessary to reach that decision. It is this author's opinion that even if a majority of the justices had adopted the policy making/policy implementing test, it would not follow that the training exercise in the present case would not be a governmental function.[2] On

---

[2] "The mere fact that a governmental agency is doing a certain act does not make such act a 'governmental function' *if a private person or corporation may undertake the same act.* Thus, 'governmental function' is not delineated by questions of the broad scope of an activity undertaken or by financial or insurance considerations which may be indicative of a governmental undertaking, but rather by viewing the precise action allegedly giving rise to liability, and *determining whether such action is sui generis governmental—of essence to governing.* Supervision of road construction (as opposed to the making of decisions as to whether to build a road), operation of hospitals and schools (as opposed to planning or deciding what health services to offer or what subject to teach), operation and supervision of playgrounds and swimming pools (as opposed to deciding whether to operate such playgrounds or pools) are not governmental functions

this issue, this author and Judge BRONSON disagree. But since that test did not command a majority of the justices, both Judge BRONSON and I agree that given the current state of the law, governmental immunity is a defense in the case before us.

Lastly, we address an issue which Judge BURNS found it unnecessary to touch upon.[3] Plaintiffs claim that even if participation in a police training exercise is a governmental function, § 5 of the Michigan governmental immunity act, MCL 691.1405; MSA 3.996(105), permits recovery. That section provides:

> "Governmental agencies shall be liable for bodily injury and property damage *resulting from the negligent operation* by any officer, agent, or employee of the governmental agency, *of a motor vehicle of which the governmental agency is owner,* as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948." 1964 PA 170, § 5, eff. July 1, 1965. (Emphasis supplied.)

Under this section liability attaches only to the single governmental unit owning the vehicle. Plaintiffs argue that the vehicle from which the injured officer was "escaping" was in a "state of being at work" in that it was being used as a mobile jail. However, the statute clearly required

---

within this definition. *On the other hand, certain aspects of the exercise of the executive, legislative, or judicial powers are by their very nature governmental functions and necessarily removed from the undertakings of the private sector." Thomas, supra,* at 21–22. (Emphasis supplied.)

This author believes that the underscored words would preclude police operations from being considered nongovernmental. Unlike road building, the operation of hospitals or the construction of swimming pools, the operation of a police department does not have a counterpart in the private sector.

[3] Having found in plaintiffs' favor on the issue of "governmental function" it was unnecessary to reach this issue.

that the injury result from the operation of the vehicle. In the instant case the injury resulted from the discharge of a firearm. The firearm discharge was in no way caused by or a result of the operation of the vehicle. It was the negligence of the other officers participating in the training exercise and not the negligence of the driver of the vehicle, which caused the injury. The trial court did not err in finding that the § 5 exception to governmental immunity did not apply.

In summary, the grant of accelerated judgment in favor of the individual defendants is therefore reversed. The issue of individual negligence is remanded for trial. Before reaching this issue, however, the trial court will first have to determine whether the South Oakland Tactical Support Unit was a joint venture and whether plaintiffs are therefore barred from proceeding against the individual defendants by the exclusive remedy provision of the worker's compensation act. MCL 418.131; MSA 17.237(131). The grant of accelerated judgment in favor of defendants who have not moved to set aside the entry of default is also reversed. The grant of accelerated judgment in favor of those municipalities and police departments not in default is affirmed.

No costs, a public question being involved.


BRONSON, P.J. *(concurring)*. With reluctance, I concur in the decision. I do so not because I agree with the policy announced in the opinion, but because I feel that the Supreme Court of this state has not yet embraced a position which would allow the decision to go the other way. It is for this reason that I write separately.

Plaintiff police officer was horribly injured while engaging in a police training exercise when an-

other officer fired a rice pellet loaded shotgun directly into his face at a distance of about three feet. As a result of the blast plaintiff suffered total and permanent blindness and severe facial disfigurement. Due to the *present* state of the law, however, plaintiff is left without a suitable remedy. The reason for this is the rigid application of the doctrine of governmental immunity, a concept which as presently interpreted has outlived its usefulness.[1]

The doctrine of governmental immunity is a carryover from days when it was thought that "it is better that an individual should sustain an injury than that the public should suffer an inconvenience". *Russell v Men of Devon,* 2 Durnford & East Term Rep 667, 673; 100 Eng Rep 359, 362 (1788). One can state with assuredness that such an idea is not the prevailing mood today. The social climate which fostered the creation of the doctrine of sovereign immunity "has long since been tempered with the warm winds of humanitarianism and individual freedom[2] * * * [and a concept which imposes] the entire burden of government's wrongful acts on the single injured individual is abhorrent to our social philosophy". *Brown v Wichita State University,* 219 Kan 2, 39–40; 547 P2d 1015, 1043 (1976) (Fatzer, C.J., concurring and dissenting), *appeal dismissed* 429 US 806; 97 S Ct 41; 50 L Ed 2d 67 (1976).

---

[1] On this point one legal commentator has stated:

"The continuation of plaintiff 'sacrifices' offered in the name of governmental immunity is without a doubt the most deplorable circumstance in Michigan jurisprudence * * * . As a legal policy, governmental immunity from tort liability is immoral and legally unjustifiable. In a purportedly enlightened society that requires its citizens to pay lawful judgments or, within ordinary prudence, requires them to insure against unreasonable risks of harm to others, governmental immunity is an embarrassing anomaly." Littlejohn, *Torts, 1974 Annual Survey of Mich Law,* 21 Wayne L Rev 665–666 (1975).

[2] Smith, *Municipal Tort Liability,* 48 Mich L Rev 41, 48 (1949).

This change in social climate from the time when sovereign immunity was established should also cause a change in the way courts perceive the doctrine.[3] In striking the balance between the rights of the society and the rights of the individual, we no longer automatically view society as the superior and the individual necessarily as the inferior. Instead the rights of the individual are considered paramount, and government must be able to justify interfering with those rights.

This same balance should also be struck in examining the doctrine of governmental immunity. Governmental immunity should be the exception not the norm. Immunity should not be invoked merely because a government official or agency performed the activity which caused the injury, but only when there are sound policy reasons behind exempting the government from liability. See Cooperrider, *The Court, the Legislature and Governmental Tort Immunity in Michigan,* 72 Mich L Rev 187, 282–283 (1973).

Government activities can generally be divided into two categories, policy making and policy implementing. Policy making activities are uniquely governmental in nature and have no counterpart in the private sector. An individual or corporation may make decisions which affect themselves or affect others but they are not entrusted with the

---

[3] By statute, government agencies are only immune from suit when "engaged in the exercise or discharge of a governmental function", MCL 691.1407; MSA 3.996(107). Since this phrase was not assigned a legislative definition, it is "presumably subject to judicial refinement". *Thomas v Dept of State Highways,* 398 Mich 1, 18; 247 NW2d 530 (1976) (KAVANAGH, C.J., FITZGERALD, J., and LEVIN, J., dissenting), quoting Cooperrider, *The Court, the Legislature and Governmental Tort Immunity in Michigan,* 72 Mich L Rev 187, 282 (1973). As described more fully further on in this opinion, I would define governmental functions as those activities in which the government officials or agencies are involved in policy making or planning functions.

authority to weigh various policy considerations
and public concerns in order to formulate public
policy which is applicable to all members of the
society. This latter function is solely governmen-
tal, and there are strong policy reasons for insulat-
ing this type of activity from liability.

Government by its very nature must address
and attempt to resolve complex policy questions.
Moreover, the resolution of policy questions must,
on occasion, injure certain individuals or groups in
society. If every such decision subjected the gov-
ernment to potential liability to people allegedly
injured by the chosen policy, there could be no
government. These decisions are the essence of
government and as Justice Jackson stated, "it is
not a tort for government to govern", *Dalehite v
United States,* 346 US 15, 57; 73 S Ct 956, 979; 97
L Ed 1427 (1953) (dissenting opinion). These deci-
sions must be insulated from liability for society to
function so there is justification for invoking the
doctrine of governmental immunity in these in-
stances.

Policy implementing activities, however, are an
entirely different matter. Although there is some-
thing uniquely governmental in the decision on
the need for and the location of a school or a road,
there is nothing uniquely governmental about the
construction of the building or the laying of the
pavement. See *Pichette v Manistique Public
Schools,* 403 Mich 268; 269 NW2d 143 (1978) (FITZ-
GERALD, J., with KAVANAGH, C.J., and LEVIN, J.,
concurring). These latter activities have numerous
counterparts in the private sector, and there is no
justifiable reason in denying recovery to persons
injured during the course of these activities merely
because they were unfortunate enough to be in-
jured by a negligent government official instead of

his counterpart in the private sector. Since there is no justification for invoking the doctrine in these situations, governmental immunity should not be available as a defense.

Application of this policy making/policy implementing test[4] to the present case would call for a rejection of the defense of governmental immunity. The decision to conduct a police training exercise was clearly a policy decision which would not subject the various governmental bodies to liability. However, the actual shooting of plaintiff was simply the negligent act of a government official. He was in no way making a policy decision. There was no balancing of policy considerations and public concerns; it was merely the negligent implementation or operation of a previously determined policy decision. As such there should be no defense of governmental immunity.[5]

[4] This policy making/policy implementing test has been adopted under various names in numerous jurisdictions. *See, e.g., Driscoll v United States,* 525 F2d 136 (CA 9, 1975), construing 28 USC 2680 (planning/operational), *Johnson v State,* 69 Cal 2d 782; 73 Cal Rptr 240; 447 P2d 352 (1968) (discretionary/ministerial) and seems to be the test preferred by legal commentators. *See, e.g.,* Littlejohn and Kotch, Torts, *1977 Annual Survey of Mich Law,* 24 Wayne L Rev 655, 676–680 (1978), Restatement of Torts 2d, § 895, B & C, Tentative Draft No 19, 1973.

[5] At footnote 4 and the accompanying text of the majority opinion, Judge ALLEN contends that the policy making/policy implementing test espoused here and previously adopted by Chief Justice KAVANAGH and Justices FITZGERALD and LEVIN would still permit the defense of governmental immunity in the present case. I do not agree. In *Thomas v Dept of State Highways,* 398 Mich 1; 247 NW2d 530 (1976) (KAVANAGH, C.J., FITZGERALD, J., and LEVIN, J., dissenting), the justices cited the case of *Downs v United States,* 522 F2d 990 (CA 6, 1975), which held that governmental immunity was not applicable to a case where the actions of the F.B.I. "allegedly caused a highjacker to shoot several hostages". *Thomas, supra,* at 22, fn 12. The citation of this case demonstrates that the justices did not regard the performance of an ordinary police function as an activity which would trigger the application of the defense of governmental immunity. The majority opinion also recognized this fact. *Thomas, supra,* at 13–14. *Cf. Armstrong v Ross Township,* 82 Mich App 77; 266 NW2d 674 (1978).

Since the activity complained of in the present case was an ordi-

But should be and is are not the same. I am not writing on a clean slate, and a majority of the Supreme Court[6] has, as yet, not embraced this position. Except for this fact, I would willingly join in the decision[7] reached by my learned brother Thomas Burns, but as matters *now* stand I feel constrained to concur in Judge Allen's decision.

T. M. Burns, J. *(dissenting in part)*. Plaintiff Ford Berger[1] filed this tort suit against 58 municipalities, police departments and individuals to recover for personal injury. Plaintiff was totally blinded and suffered severe facial disfigurement when he was struck in the face by rice kernels fired from a shotgun by a fellow police officer while they were participating in a training exercise of the tactical support unit of the South Oakland County Mutual Aid Pact.

Plaintiff was an employee of the Royal Oak Police Department at the time of the injury. During the training exercise he was acting as a sniper and was "captured" by other police officers. The injury occurred when he attempted to "escape"

nary police function, the defense of governmental immunity would not be applicable under the above-mentioned test.

[6] *See Pichette v Manistique Public Schools*, 403 Mich 268; 269 NW2d 143 (1978), *Thomas v Dept of State Highways*, 398 Mich 1; 247 NW2d 530 (1976).

[7] Although the test espoused by my learned colleague Thomas Burns would most likely yield the same results as the test adopted here, it is my opinion that the terminology of the policy making/policy implementing test is preferable. Under Judge Burns' test, the doctrine of governmental immunity is accepted in theory, but eliminated in practice. This is so because the specific activity complained of is always negligence, and negligence is never a governmental function. Therefore there is never a defense of governmental immunity. The test adopted here, however, acknowledges that there is a legitimate sphere in which the doctrine is applicable and then specifically limits the doctrine to that sphere.

[1] The complaint also included a derivative action by Mrs. Peggy Berger. Plaintiff will be used to describe the claims of both Mr. & Mrs. Berger throughout the opinion.

from a police vehicle and a shotgun loaded with rice was discharged at his face from a distance of less than five feet.

The lower court dismissed the complaint against all defendants on two bases: (1) that all defendants were either coemployees or the employer of plaintiff and, therefore, his exclusive remedy was under the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131), or (2) the defendants were entitled to governmental immunity under MCL 691.1407; MSA 3.996(107). Plaintiff appeals by right to challenge these findings.

## I

The trial court granted blanket relief to all defendants. Perhaps this was the result of the large number of defendants as noted above. We are sympathetic with the judge's response to the problem, having received several hundred pages of briefs and documents on appeal ourselves. However, in granting the blanket relief, the court granted judgment in favor of a number of defendants[2] who had never appeared and against whom defaults had been entered. Plaintiff claims this was improper and we agree.

GCR 1963, 520.1 provides in part that, "[O]nce a default of any party has been duly filed or entered, that party shall not proceed with his case until his

[2] Plaintiff claims that there were ten defendants in default at the time the judgments were entered. Our review of the record shows that there were defaults outstanding against the City of Pleasant Ridge and its police department, Sterling Township and its police department, Mike Mahoney, Officer Stevenson, the Chiefs of Police Association and the South Oakland Tactical Support Unit at the time the judgments were entered. The City of Sterling Heights, which was the successor to Sterling Township, had moved to have its default set aside. The trial court has never passed on this motion and the motion to set aside should be decided before a default judgment is entered against Sterling Heights.

default has been set aside by the court in accordance with sub-rule 520.4." If a party cannot proceed with his case until the default is set aside, it is improper for the court to grant judgment in his favor. As to those defendants who had been defaulted at the time the judgments were entered, the judgments are reversed and the case remanded to allow plaintiff to move for entry of a default judgment or other appropriate action. See note 2.

## II

Several of the defendants who did answer below and eventually moved for summary or accelerated judgment under GCR 1963, 116.1(2) or 117.2(1) based those motions on the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131).[3] These defendants reasoned that under the mutual aid pact signed by the various cities, a type of joint venture had been entered into and, therefore, all the cities and police departments were coemployers and all the individuals were coemployees of plaintiff. The joint venture construction of the aid pact was adopted by the circuit court and has now been adopted by substantially all of the defendants participating in the appeal.

If plaintiff was injured by the act of a coemployee in a situation covered by the worker's compensation act, this tort suit would be barred by the exclusive remedy provision of the act. *Ayers v Genter,* 367 Mich 675; 117 NW2d 38 (1962). The parties and the trial court seem to have assumed

---

[3] Only the police departments and Cities of Ferndale, Huntington Woods, Madison Heights, Troy and Beverly Hills and several individuals relied on this ground below.

both the existence of a joint venture and that all employees of one party to the venture were coemployees of all other parties to the venture. The second assumption is not supported by Michigan law. Our Supreme Court specifically refused to answer the question in *Goodwin v S A Healy Co,* 383 Mich 300, 313; 174 NW2d 755 (1970), *rev'g,* 13 Mich App 514; 164 NW2d 693 (1968). Nor is it necessary to determine the question, on the present record, in this case.

The appropriate question is who was plaintiff's employer? The answer to the question is determined by applying the "economic reality" test. *Smith v Martindale,* 81 Mich App 682; 266 NW2d 49 (1978),[4] and cases cited therein. It is only where it can be determined under this test that the defendants were plaintiff's employers or coemployees that the exclusive remedy provision would bar this suit.

The present record is insufficient to make that determination. Certainly, referring only to the agreement between the municipalities, while important, will not completely answer the question. In a tort suit, as opposed to a worker's compensation hearing, the issue of whether plaintiff was an employee of the defendants should be submitted to the jury, under proper instructions, for determination based on all the evidence.[5] *Goodwin v S A Healy Co,* 383 Mich at 311.

The trial court erred in basing judgment on this ground.

## III

The trial court also granted a blanket judgment

---

[4] In *Nichol v Billot,* 80 Mich App 263; 263 NW2d 345 (1977), *lv gtd,* 402 Mich 922 (1978), the panel held that in a tort suit the "control" test was still the appropriate test. We believe the weight of authority requires application of the economic reality test in tort suits also.

[5] This issue would be for the court only if there are no disputed facts. *Smith v Martindale, supra.*

in favor of all defendants on the basis of governmental immunity. MCL 691.1407; MSA 3.996(107).[6] In Section I of the opinion we held this was improper as to those defendants in default. The immunity of the other defendants must be considered separately, although they may be classified in three groups.

(a) *Liability of the municipal police departments and departments of public safety.*

Plaintiff made the police departments and departments of public safety of the various municipalities separate defendants. Many of these defendants claimed below and argue on appeal that they cannot be sued as a separate entity, apart from their parent municipality.

Early in the development of the doctrine of governmental immunity the inability to raise funds, through taxation or otherwise, was one justification given for finding immunity. *O'Leary v Marquette Board of Fire & Water Commissioners,* 79 Mich 281; 44 NW 608; 7 LRA 170; 19 Am St R 169 (1890). Some later cases have referred to the inability to raise funds as an independent ground for nonliability without critical analysis. See, *McPherson v Fitzpatrick,* 63 Mich App 461; 234 NW2d 566 (1975), *lv den,* 399 Mich 830 (1977). However, the inability to raise funds was nothing more than one of the stated justifications for the

---

[6] With the demise of common-law governmental immunity for the state and its agencies in *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), all immunity in this state is statutory. The present statute provides: "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofor, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

doctrine of governmental immunity, not a separate immunity. *Bush v Oscoda Area Schools,* 72 Mich App 670, 685; 250 NW2d 759 (1976) (Opinion of W. R. PETERSON, J.), *lv gtd,* 399 Mich 895 (1977).

The police departments and departments of public safety stand on the same footing as the municipalities themselves. There is no immunity simply because of their inability to raise funds, it rests on the same statute as the immunity of the municipalities. This is the clear import of *Allen v Womack,* 399 Mich 833; 250 NW2d 68 (1977), reversing a judgment in favor of the Detroit Police Department on the basis of governmental immunity.

This group of defendants is bound by the standards applicable to the municipalities set out below.

### (b) *Liability of the individual officers.*

In granting judgment for all defendants, the trial court concluded that the individual officers were entitled to immunity under the statute. This is incorrect on these facts. The officers had an individual common-law duty to exercise due care when dealing with plaintiff. *Cole v Rife,* 77 Mich App 545; 258 NW2d 555 (1977).[7] The statute grants no immunity to an individual for personal acts of negligence solely because he is a governmental employee. The complaint in this case is sufficient to avoid summary judgment under GCR 1963, 117.2(1) as to the individual defendants and, therefore, the judgments in favor of these defendants must be reversed.

---

[7] *Cole* drew support from *Lovitt v Concord School District,* 58 Mich App 593; 228 NW2d 479 (1975). *Lovitt* was criticized by Justice WILLIAMS in his opinion in *Galli v Kirkeby,* 398 Mich 527, 536; 248 NW2d 149 (1976), and cited with approval by Justice COLEMAN in her opinion in the same case. 398 Mich at 544.

The judgments in this case were granted before discovery was begun and the record does not satisfactorily explain the relationship of some of the individual officers to plaintiff's injury. After discovery is completed, it would not be inappropriate for the trial court to consider individual motions for summary judgment under GCR 1963, 117.2(3), the absence of material fact. If there is no question of material fact concerning the breach of the individual's duty to plaintiff, *i.e.,* if the individual is not involved with the injury, the summary judgment would be proper. However, the trial court acted prematurely in dismissing the suit against all the individual officers on the present record.

### (c) *Liability of the municipalities.*

The most difficult question in this appeal is which, if any, of the municipal defendants were properly dismissed on the present record. It is my view that the record is insufficient to show which of this group of defendants may be responsible for the acts of the individual officers directly causing plaintiff's injury and, therefore, the appropriate action is to reverse the blanket grant of judgment for the defendants and remand for further proceedings.[8] *Cf. Kriger v South Oakland County Mutual Aid Pact,* 399 Mich 835; 250 NW2d 67 (1977) *rev'g* 49 Mich App 7; 211 NW2d 228 (1973).

The body of law collectively known as "governmental immunity" is presently ever changing in an attempt to settle on a doctrine which can be

---

[8] For example, the City of Bingham Farms claims that it is not a member of the mutual aid pact and had no officers present at the training exercise. Apparently, the City of Bingham Farms has no police force at all. An individual motion for summary judgment based on the absence of any material fact would be appropriate after the remand.

accepted as just, both by the citizens of the state and the judges of the various courts. The recent efforts of the Supreme Court[9] have done little to bring certainty to the area or to quiet the cries of injustice. We can only hope that either the Supreme Court or the Legislature act soon to correct a situation which, judging from the number of cases and the lack of uniform disposition in this Court, has resulted in much confusion. See Justice LEVIN's dissent in *Thomas v Dept of State Highways,* 398 Mich 1, 25; 247 NW2d 530 (1976). Perhaps an answer will come with the opinion in *Parker v Highland Park, lv gtd,* 399 Mich 833 (1977).

Until the Supreme Court speaks with more unanimity, this Court is free to address the question on a case by case basis. In dealing with the problem, I have found the possibility of governmental liability to be dependent on the type of activity engaged in by the governmental agents and the proximity of the plaintiffs to the governmental defendant. Compare, *Wojtasinski v Saginaw,* 74 Mich App 476; 254 NW2d 71 (1977) (one prisoner beaten by another in a county jail) and *Allen v Dept of Mental Health,* 79 Mich App 170, 173; 261 NW2d 247 (1977), (T. M. BURNS, J., concurring) (patient committing suicide while on temporary leave from the state defendant) with *Gerzeski v Dept of State Highways,* 68 Mich App 91, 101; 241 NW2d 771 (1976) (T. M. BURNS, J., dissenting), *rev'd,* 403 Mich 149; 268 NW2d 525 (1978), *White v Detroit,* 74 Mich App 545, 548; 254 NW2d 572 (1977) (T. M. BURNS, J., dissenting), *Duncan v De-*

---

[9] *Thomas v Dept of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976), and *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976).

*troit,* 78 Mich App 632, 634; 261 NW2d 26 (1977)[10]
(T. M. Burns, J., dissenting) and *Brown v Detroit,*
83 Mich App 342; 268 NW2d 400 (1978) (T. M.
Burns, J., dissenting).

In this case, plaintiff claims he was injured
when he was negligently shot in the face by a
police officer. He also claims negligence in allow-
ing rice filled shells to be used in the police train-
ing exercise. I cannot believe that either of these
specific claims of negligence is in any way a gov-
ernmental function. Certainly there are many situ-
ations where a private entity would be liable for
such actions.

Which of the municipal defendants are responsi-
ble for these negligent acts depends on facts which
can only be developed by further proceedings. It is
only after the facts are developed that the rela-
tionship of the various defendants to each other
and to the injured plaintiff can be determined, see
section II of this opinion, and based upon those
relationships which governmental units were re-
sponsible for the acts of the individual officers.

The judgments of the circuit court are reversed
and the case remanded for further proceedings not
inconsistent with this opinion. No costs, a public
question.

---

[10] Application for leave to appeal in *White* and *Duncan* has been
held in abeyance pending disposition of *Parker v Highland Park.*